UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>FREDDY ARNOLDO SALAZAR FLORES,<br>also known as "Fredy," "Freshco," "Boyca," "Boyka," "Torojo," "Flaquillo," and "Flaco"<br><br>                              Defendant. | CRIMINAL NO. 17-CR-101 |

**GOVERNMENT'S MOTION FOR PRE-TRIAL DETENTION**

The United States respectfully moves to detain the Defendant, Freddy Arnoldo Salazar Flores pending trial, pursuant to 18 U.S.C. § 3142(e)(1). The Defendant is a high-level member of a Guatemala-based drug trafficking organization ("DTO") that transports tonnage quantities of cocaine for sale and distribution to Mexico-based DTOs for ultimate importation into the United States. The Defendant is charged with drug trafficking offenses for which the law presumes that no condition or combination of conditions will guarantee the Defendant's presence in court or the safety of the community. Further, the Defendant faces a potential maximum sentence of life imprisonment; may have access to large amounts of untraceable drug proceeds; lacks legal immigration status; and is subject to an immigration detainer. Accordingly, the Defendant presents a serious risk of flight and danger to the community that cannot be mitigated by any condition or combination of conditions and should be detained pending trial.

**BACKGROUND**

On May 30, 2017, a grand jury sitting in the District of Columbia returned an Indictment (the "Indictment") against the Defendant, charging him with conspiring to distribute five or more kilograms of cocaine, intending, knowing, and having reasonable cause to believe that the cocaine

1

would be unlawfully imported into the United States, in violation of 21 U.S.C. §§ 959(a), 960, and 963. That same day, the United States District Court for the District of Columbia issued an arrest warrant for the Defendant based on the Indictment.

The Indictment is the product of a long-term, extensive, and ongoing investigation conducted by the Drug Enforcement Administration into a narcotrafficking subgroup of the Sinaloa Cartel operating primarily in Honduras and Guatemala (the "Gastelum Serrano DTO"). The Gastelum-Serrano DTO was responsible for sending shipments of cocaine from Central America to the Sinaloa Cartel who then transported that cocaine to the United States and Europe using maritime vessels, tractor trailers, airplanes, and vehicles with hidden compartments. Evidence will show that from in or around early 2010 and continuing thereafter, up to and including May 30 ,2017, the Defendant engaged in a conspiracy of supplying cocaine to the Sinaloa Cartel and other Mexican DTOs with the ultimate objective of importing cocaine into the United States for profit.

The Government's evidence includes Title III intercepts of electronic communications, in-person consensually recorded audio communications, testimony from cooperating witnesses who had direct dealings with the Defendant regarding drug trafficking, as well as physical evidence, including drug ledgers authored and maintained by a cooperating witness that reference the Defendant's role within the DTO.  During the course of the investigation, agents intercepted hundreds of pertinent communications, in which the Defendant discussed drug trafficking activities.

The Defendant worked closely with his father-in-law, Aler Baldomero Samayoa-Recinos ("Samayoa-Recinos") and the Los Huistas DTO, to establish and maintain a sophisticated transportation network within Guatemala to transport cocaine through Guatemala for further sale

and distribution to the Sinaloa Cartel. The transshipment began in warehouses maintained by the Defendant in Guatemala City. Using an established smuggling route, the cocaine was then moved to Huehuetenango, Guatemala, located near the Mexican border, where Samayoa-Recinos would transfer the narcotics to their Mexican partners.

The Defendant received tonnage quantities of cocaine at his warehouses in Guatemala City from various DTOs; the Defendant's workers would transport cocaine shipments to Huehuetenango through the farms belonging to Samayoa-Recinos. The Defendant was paid an estimated $100 to $200 in U.S. currency[1] for each kilogram transported from Guatemala City to Huehuetenango. The payments for the cocaine followed the same route, but in reverse, flowing from Mexico to Samayoa-Recinos in Huehuetenango, then picked up by the Defendant's workers who would transport the drug proceeds to the Defendant in Guatemala City.

On April 22, 2014, Honduran authorities seized 743 kilograms of cocaine in Honduras that were intended for delivery to the Defendant in Guatemala City and further distribution to Samayoa-Recinos. Between 2010 and 2014, the Defendant and Samayoa-Recinos, using the trafficking route that they established and operated, transported more than 50 metric tons of cocaine into Mexico for further distribution into the United States and elsewhere.

The Defendant is a Guatemalan national with no known contacts in the United States. He was paroled into the United States to stand trial in this case and has no valid visa to remain here.

---

[1] The price of cocaine varies over time, and the per kilogram transport costs also likely varied. This estimate is based on estimated cocaine price in around 2012 to 2014

An Immigration and Customs Enforcement detainer is in place if Defendant is released from the custody of the U.S. Marshal's Service.

On March 8, 2022, the Indictments against the Defendant and Samayoa-Recinos were unsealed. On March 18, 2022, the Treasury Department imposed sanctions on the Defendant, Samayoa-Recinos, and other Los Huistas members. On May 14, 2025, the Defendant eventually self-surrendered to U.S. authorities in Belize and was transported to the United States on the same day.

## **LEGAL STANDARDS**

Under the Bail Reform Act, 18 U.S.C. §§ 3141 *et seq.*, courts must order a defendant's pre-trial detention upon determining that "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1), (f). "In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' *or* a 'danger to the community.'" *United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019) (emphasis added); *see also* 18 U.S.C. § 3142(c)(1) ("If the judicial officer determines that the release . . . will not reasonably assure the appearance of the person as required *or* will endanger the safety of any other person or the community . . . ." (emphasis added). The Government bears the burden of establishing a defendant's danger to the community by clear and convincing evidence, but the Government need only prove the Defendant poses a flight risk by a preponderance of the evidence. *United States v. Munchel*, 533 F. Supp. 3d 1, 8 (D.D.C. 2021) (dangerousness); *Vasquez-Benitez*, 919 F.3d at 551 (flight risk).

Moreover, when the court finds that there is probable cause to believe that a defendant committed (1) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act or Controlled Substances Import and Expert Act; or

(2) an offense under 18 U.S.C. § 924(c), that finding triggers a rebuttable presumption that no condition or combination of conditions can reasonably assure the defendant's appearance and the safety of others when the court finds. 18 U.S.C. § 3142(e)(3). In making the final determination as to whether a defendant should be detained pending trial, the court must take into account: (1) the nature and circumstances of the offense charged; (2) the weight of evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

## ARGUMENT

Defendant should be detained while awaiting trial because he poses a serious flight risk and is a danger to the community.

**I.     There Is a Rebuttable Presumption that Defendant Is Dangerous and a Flight Risk**

The Court should begin its analysis with the presumption that no condition or combination of conditions will reasonably assure the Defendant's appearance or the safety of the community. The Indictment alleges that the Defendant conspired to distribute five kilograms or more of cocaine for unlawful importation into the United States, in violation of 21 U.S.C. §§ 959(a), 960, and 963 – an offense that carries a mandatory minimum sentence of ten years and maximum sentence of life in prison. This charge qualifies as a presumption offense under 18 U.S.C. § 3142(e)(3)(a). Accordingly, there is a rebuttable presumption that the Defendant is both dangerous and a flight risk.

**II.    All Four Factors Under 18 U.S.C. § 3412(g) Weigh in Favor of Pre-Trial Detention**

Pursuant to 18 U.S.C. § 3412(g), to the Court should consider four factors in determining if there are conditions of release that will reasonably assure the appearance of a defendant and the safety of the community. All four factors weigh heavily against the Defendant's release.

a. <u>The Nature and Circumstances of the Offenses Charged</u>

Defendant engaged in a multi-year drug trafficking conspiracy to import cocaine into the United States. Based on the amount of cocaine attributable to him, the Defendant's U.S. Sentencing Guidelines base offense level would be 38; he is also eligible for enhancements based on his aggravating role and the use of an aircraft. With a criminal history category of I, the Defendant could face a Sentencing Guidelines range of life imprisonment.

The nature of the charges and the severe penalties the Defendant faces underscore both his flight risk and dangerousness. *See* 18 U.S.C. § 3142(g)(1) (court should consider whether the offense is a crime of violence or involves a controlled substance, firearm, explosive, or destructive device); *United States v. Hong Vo*, 978 F. Supp. 2d 41, 43 (D.D.C. 2013) (holding that serious nature of offenses and punishments Congress provided for those offenses gave the defendant substantial incentive to flee); *United States v. Anderson*, 384 F.Supp.2d 32, 36 (D.D.C. 2005) (holding the gravity of the offenses and the potential prison term create a considerable incentive for the defendant to flee).[2]

b. <u>The Weight of the Evidence Against the Defendant</u>

The Government's evidence includes intercepted communications by the Defendant, testimony from the Defendant's co-conspirators, ledgers authored and maintained by a co-

---

[2] Indeed, courts have recognized that Congress created a rebuttable presumption in favor of pretrial detention because Congress found "based on extensive testimony, that flight to avoid prosecution is particularly high among those charged with major drug offenses." *United States v. Martir*, 782 F.2d 1141, 1144 (2d Cir. 1985); *United States v. Alatishe*, 768 F.2d 364 at 370 n.14 (D.C. Cir. 1985) (rebuttable presumption for serious drug trafficking offenses included because "the extremely lucrative nature of drug trafficking, and the fact that drug traffickers often have established substantial ties outside the United States from whence most dangerous drugs are imported into the country," means that "these persons have both the resources and foreign contacts to escape to other countries with relative ease in order to avoid prosecution for offenses punishable by lengthy prison sentences") (quoting S.Rep. No. 225, 98th Cong., 1st Sess. 20 (1983), U.S.Code Cong. & Admin.News 1984, p. 3203).

conspirator that document the flow of drugs within the DTO, and at least one known seizure of substantial amount of cocaine by foreign law enforcement. The evidence is comprehensive, varied, and substantial. And it provides the Defendant with considerable incentive to flee. *United States v. Chansley*, 525 F. Supp. 3d 151, 170 (D.D.C. 2021) ("The overwhelming weight of the evidence may further prompt defendant to flee and thus weighs in favor of pre-trial detention.").

    c.   <u>The History and Characteristics of the Person</u>

The Defendant is a Guatemalan national with no known ties to the District of Columbia or the United States. He maintains strong familial and criminal connections in Guatemala and likely has access to substantial drug proceeds in the form of untraceable cash. The Defendant was brought to the United States solely for the purpose of federal prosecution, and a U.S. Immigration and Customs Enforcement detainer is in place should he be released from the custody of the U.S. Marshal's Service. Given that he has no legitimate reason to remain in the country beyond this criminal case, he presents a significant risk of flight if released.

    d.   <u>The Nature and Seriousness of the Danger to Others</u>

At trial, the Government will present substantial evidence that the Defendant's cocaine trafficking activities were to service the Sinaloa Cartel, among other Mexican DTOs. On February 20, 2025, the Sinaloa Cartel was designated by the State Department as a foreign terrorist organization pursuant to Executive Order 13224. The Sinaloa Cartel is one of the world's most powerful drug cartels and is known to "murder, kidnap, and intimidate civilians, government officials, and journalists." Releasing the Defendant—whose year-long criminal activities were

intimately tied to a now-recognized terrorist organization—into our community could pose grave and danger to the safety to American public.

## CONCLUSION

Although the Defendant's self-surrender saved the Government resources to capture and extradite him, it does not mitigate any of the risk factors analyzed above. The relevant inquiry for the Court is whether there are conditions that can be placed upon the Defendant that will reasonably assure the Defendant's appearance at future court proceedings and the safety of the community. There are none. The United States respectfully requests that the Court detain the Defendant pending trial.

Respectfully submitted Thursday, May 15, 2025.

                MARLON COBAR, Chief
                Narcotic and Dangerous Drug Section
                Criminal Division
                U.S. Department of Justice

By:    */s/ Douglas Meisel*
           Douglas Meisel
           Josh Katcher
           Ligia Markman
           Trial Attorneys
           Narcotic and Dangerous Drug Section
           Criminal Division
           U.S. Department of Justice
           145 N Street, Northeast
           Washington, D.C. 20530
           (202) 598-2281
           Douglas.meisel@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served via ECF to counsel of record, on Thursday, May 15, 2025.

By:   */s/ Douglas Meisel*
Douglas Meisel
Trial Attorney
Narcotic and Dangerous Drug Section
Criminal Division
U.S. Department of Justice